IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AMALGAMATED BANK,

               Plaintiff,

    v.

SAMIR BONOMO, et al.,

               Defendants.

CIVIL ACTION
NO. 13-0936

## OPINION

**Slomsky, J.**                                                      **August 21, 2014**

## I.     BACKGROUND

Before the Court is a dispute over a loan.  Liability is not in issue.  Instead, the critical issue here is the amount of money owed.  The facts leading up to this litigation are not in dispute.[1]  In September 2005, Plaintiff Amalgamated Bank ("Plaintiff") lent $33,000,000 ("the Loan") to Rimas Properties, LP ("the Debtor").  (Doc. No. 19-9 at 1.)  The Loan provided funds for the construction of a condominium building in Philadelphia, Pennsylvania.  (Id.)  On September 2, 2005, the Debtor executed and delivered a Promissory Note for $33,000,000 in favor of Plaintiff ("the Note") and, as security for the Note, the Debtor executed, acknowledged and delivered to Plaintiff a Construction Loan Mortgage ("the Mortgage").  (Id. at 2.)  As further security for the Note, Defendants Samir Bonomo and Rimas Properties, LLC (together, "Defendants"), executed and delivered a Payment Guaranty Agreement ("the Guaranty").  (Id.)  In the Guaranty, Defendants guaranteed to Plaintiff the "full, prompt and unconditional payment

---

[1]  On December 20, 2013, Plaintiff submitted to the Court an Undisputed Statement of Facts.  (Doc. No. 19-9.)  Defendants have not contested Plaintiff's version of events, and at a hearing held on March 5, 2014, Defendants conceded that there is no factual dispute here.  (Doc. No. 31.)

of all the obligations under the Note." (Id.)  The maturity date of the Note was March 2, 2009,

but the Debtor failed to repay the Loan by this date. (Id. at 3.)  Defendants also failed to pay the

amount due under the Note by the maturity date. (Id.)  On June 10, 2009, after numerous

attempts to collect on the Loan, Plaintiff filed a confession of judgment against the Debtor ("the

Judgment"). (Id.)  The principle amount of the Judgment is $28,496,782.72, plus costs. (Id. at

4.)

      To collect on this debt, Plaintiff listed the condominium property ("the Property") for

Sheriff's sale and purchased all but one residential unit ("Unit 418") for a total of $192,629.76.

(Id.)  Unit 418 was purchased by a third-party for $625,000, and Plaintiff eventually received net

proceeds in the amount of $607,760.93 from the sale of that unit. (Doc. No. 19-3 at 5.)  Then,

Plaintiff petitioned the Philadelphia Court of Common Pleas to fix the fair market value of the

Property. (Doc. No. 19-9 at 4-5.)  The Court of Common Pleas determined the fair market value

of the Property to be $18,890,562.24. (Id. at 5.)  Pursuant to Pennsylvania law, Plaintiff reduced

the principle amount of the Judgment by the fair market value of the Property and the proceeds

from the sale of Unit 418.  Later, Plaintiff received $100,000 in proceeds from the sale of another

property owned by Defendant Samir Bonomo (the "218 Church Street Property"), and reduced

the principle amount of the Judgment by this amount as well.

      On February 21, 2013, after Defendants' refused to pay the remaining amount due under

the Judgment, Plaintiff brought suit in this Court. (Doc. No. 1.)  Plaintiff's Complaint alleges in

Count I a breach of the Guaranty arising from Defendants' failure to repay the outstanding

amount. (Doc. No. 1 at 7.)  In Count II, Plaintiff alleges that Defendants are responsible to pay

$12,785,395.04, plus daily interest from January 1, 2014 to the present of $1,977.84. (Id. at 8.)

On December 20, 2013, Plaintiff filed a Motion for Summary Judgment on both Counts. (Doc. No. 19.)  On January 6, 2014, Defendants filed a Response, arguing that Plaintiff had miscalculated the outstanding amount, but conceding breach of conditions relating to the Loan. (Doc. No. 25.)  On January 13, 2014, Plaintiff filed a Reply.  (Doc. No. 27.)  On March 5, 2014, a hearing was held on the Motion.  (Doc. No. 31.)  The issue is now ripe for disposition.  For reasons that follow, the Court will grant Plaintiff's Motion in its entirety.

## II.      STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) ("Rule 56").  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if "it might affect the outcome of the suit under the governing law."  Id.  A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Where a non-moving party bears the burden of proof on a particular issue, the moving party may meet its initial burden by "pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case."  Id. at 325.  "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor."  Azur v. Chase Bank, USA, Nat. Ass'n, 601 F.3d 212, 216 (3d Cir. 2010) (quoting Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d

3

Cir.1999)).   Per Rule 56, a federal court must view the evidence presented on the motion in the light most favorable to the non-moving party.  <u>Anderson</u>, 477 U.S. at 255.  Put another way, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  <u>Id.</u>

Here, Defendants do not dispute that by failing to pay the amount due on the Loan, they breached the Guaranty.  (Doc. No. 4.)  Accordingly, there is no genuine dispute as to Count I, and Plaintiff is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  For this reason, Plaintiff's Motion for Summary Judgment will be granted as to Count I, and the remainder of the Court's Opinion will focus on the amount owed to Plaintiff.

## III.   UNDER THE PENNSYLVANIA DEFICIENCY JUDGMENT ACT, PLAINTIFF IS ENTITLED TO THE FULL AMOUNT REQUESTED

The Pennsylvania Deficiency Judgment Act ("the Act") controls the procedure a judgment creditor must follow in order to collect on a judgment against a debtor.  The relevant provisions of the Act are as follows:

Deficiency Judgments

> Whenever any real property is sold, directly or indirectly, to the judgment creditor in execution proceedings and the price for which such property has been sold is not sufficient to satisfy the amount of the judgment, interest and costs, and the judgment creditor seeks to collect the balance due on said judgment, interest and costs, the judgment creditor shall petition the court to fix the fair market value of the real property sold. . . .

> After . . . the determination by the court . . . of the fair market value of the property sold, . . . the debtor shall be released and discharged of such liability to the judgment creditor to the extent of the fair market value of said property determined by the court . . . and . . . thereupon the judgment creditor may proceed by appropriate proceedings to collect the balance of the debt.[2]

---

[2]  The Act protects debtors by mandating that debtors are released from liability for the fair market value of the property at issue, plus the amount the property sold for at a Sheriff's sale.

4

42 Pa. C.S.A. § 8103.

Interest on Judgments

> Except as otherwise provided by another statute, a judgment for a
> specific sum of money shall bear interest at the lawful rate from
> the date of the verdict or award, or from the date of the judgment,
> if the judgment is not entered upon a verdict or award.

42 Pa. C.S.A. § 8101.

Additionally, the "lawful rate" of interest in Pennsylvania is six percent, as set in

41 Pa. S.A. § 202:

> Reference in any law or document enacted or executed heretofore
> or hereafter to "legal rate of interest" and reference in any
> document to an obligation to pay a sum of money "with interest"
> without specification of the applicable rate shall be construed to
> refer to the rate of interest of six per cent per annum.

41 Pa. S.A. § 202.

Here, after the Debtor and Defendants failed to pay the amount due under the Note,

Plaintiff filed the confession Judgment against the Debtor in the Philadelphia Court of Common

Pleas.  (Doc. No. 19-9 at 3.)  Plaintiff then became a "judgment creditor" under the Act.  The

principle amount of the Judgment was $28,496,782.72, plus costs.  (Doc. No. 19-9 at 4.)  To

collect on this debt, Plaintiff listed the Property for Sheriff's sale and purchased all residential

units, except Unit 418.  (Id.)  Unit 418 was purchased by a third-party for $625,000, and Plaintiff

eventually received net proceeds in the amount of $607,760.93 from the sale of that unit.  (Doc.

No. 19-3 at 5.)

Because the price for which the Property sold was "not sufficient to satisfy the amount of

the judgment," Plaintiff "petition[ed] the court to fix the fair market value of the real property

sold."  42 Pa. C.S.A. § 8103.  On April 10, 2012, the Philadelphia Court of Common Pleas fixed

the fair market value of the property at $18,890,562.24.  (Doc. No. 19-17.)  Pursuant to the Act,

5

Defendants' debt was reduced by the fair market value of the Property ($18,890,562.24).

Additionally, Plaintiff reduced Defendants' debt by the proceeds from the sale of Unit 418

($607,760.93).  Later, the debt was also reduced by $100,000, after Plaintiff received the

proceeds from the sale of the 218 Church Street Property.  According to Plaintiff, the final

amount owed by Defendants was calculated using the following formula:

> To calculate the amount owed, [Plaintiff] started with the amount of the Judgment that was entered on June 10, 2009. [$28,496,782.72, plus costs]
>
> [Plaintiff] then calculated interest on this Judgment at the statutory rate of 6%, less reductions in the amount owed due to
>
> (a)    [Plaintiff's] acquisition of property at the December 1, 2009, Sheriff's sale. [$18,890,562.24]
>
> (b)    the net proceeds that [Plaintiff] received from the sale of Unit 418 at the Sheriff's sale [$607,760.93], and
>
> (c)    proceeds that [Plaintiff] received from the sale of Mr. Bonomo's property located at 218 Church Street, Philadelphia, Pennsylvania.  [$100,000.00]

(Doc. No. 19-3 at 9.)

In its Motion for Summary Judgment, Plaintiff included the following chart which

"evidences and explains [Plaintiff's] calculation of the amount owed as of December 31, 2013":

| | |
|---|---|
| **Principal Amount of the Judgment:** [entered June 10, 2009] | $28,496,782.72 |
| **Plus:** Interest at the statutory rate of 6% against the amount of the Judgment from June 11, 2009 through April 21, 2010, the date of [sic] the first Sheriff's deed was delivered. . . . | $1,470,902.43 |
| **Less:** Fair market value of the Units [Plaintiff] acquired at the Sheriff's sale. . . . | ($18,890,562.24) |
| **Less:** Proceeds from the sale of Unit 418. . . . | ($607,760.93) |

| | |
|---|---|
| **Sub-total:**<br>Total amount owed as of April 21, 2010. | $10,469,361.98 |
| **Plus:**<br>Interest at the statutory rate of 6% against the total amount owed . . . from April 22, 2010 through December 14, 2012, the date when [Plaintiff] received a share of the proceeds from the sale of [the 218 Church Street Property]. | $1,662,477.32 |
| **Less:**<br>Proceeds from the sale of [218 Church Street Property]. | ($100,000.00) |
| **Sub-Total:**<br>Amount owed as of December 14, 2012. | $12,031,839.29 |
| **Plus:**<br>Interest calculated at the statutory rate of 6% against the total amount owed . . . from December 15, 2012 through December 31, 2013. | $753,555.74 |
| **TOTAL OWED AS OF DECEMBER 31, 2013** | **$12,785,395.04** |
| **Daily Interest Commencing January 1, 2014**<br>($12,031,839.29 x 6% ÷ 365) | **$1,977.84** |

(Id. at 10) (emphasis in original).

Additionally, in the Guaranty, the parties agreed that Plaintiff should recover costs,

including reasonable attorneys' fees, in the case of default.  (Doc. No. 19-13 at 7.)  Section

Eleven of the Guaranty reads as follows:

> Guarantor agrees that if a default or Event of Default occurs hereunder or under any of the Loan Documents, Guarantor will reimburse Lender for (and the Indebtedness shall be deemed to include) all costs and expenses (including without limitation, reasonable attorneys' fees) incurred by Lender, whether or not suit is instituted, in enforcing or exercising any rights, powers, privileges or remedies granted to Lender under this Guaranty Agreement and/or the Loan Documents and in realizing upon any security for the Indebtedness or Obligations, and for all costs and expenses of Lender incurred in connection with the administration and enforcement of this Guaranty Agreement and/or the Loan Documents.

(Id.)

The Court agrees with Plaintiff's calculation of the remaining amount due under the

Loan, and finds that under the Pennsylvania Deficiency Judgment Act, Plaintiff is entitled to

$12,785,395.04, plus daily interest from January 1, 2014 of $1,977.84.  The Court also finds that Section Eleven of the Guaranty is enforceable against Defendants and Plaintiff is entitled to reasonable attorneys' fees.

As noted above, Defendants disagree with Plaintiff's calculation of damages. Specifically, Defendants argue that: 1) Plaintiff is not entitled to an award of attorneys' fees; 2) Plaintiff's award should be reduced based on Plaintiff's subsequent, profitable use of the Property; and 3) Plaintiff's interest award should be reduced.  The Court will discuss each of Defendants' arguments seriatim.

### A.  Plaintiff is Entitled to Attorneys' Fees Pursuant to the Guaranty Agreement

First, Defendants argue that Plaintiff is not entitled to attorneys' fees because the Judgment is the only document upon which Plaintiff may rely to enforce its rights under the loan. Defendants argue that because of the "doctrine of merger," the terms of the Note and the Mortgage merged into the Judgment at foreclosure and no longer provide a basis of relief.

Under the doctrine of merger, "the terms of a mortgage are merged into a foreclosure judgment and thereafter [the terms of the mortgage] no longer provide the basis for determining the obligations of the parties."  In re Stendardo, 991 F.2d 1089, 1095 (3d Cir. 1993) (citing In re Presque Isle Apartments, 112 B.R. 744, 747 (Bankr.W.D.Pa.1990); In re Herbert, 86 B.R. 433, 436 (Bankr.E.D.Pa.1988) ("The Debtor is, in our view, correct in her assertion that the mortgage is merged in a judgment entered in a mortgage foreclosure action in Pennsylvania.") (internal citations omitted)).

Here, pursuant to the doctrine of merger, the terms of the Note and the Mortgage did merge into the Judgment.  Therefore, the Note and the Mortgage "no longer provide the basis for determining the obligations of the parties."  Id.  However, Defendants were not "parties" to the

8

Note or the Mortgage.[3]  (Doc. No. 19-12; Doc. No. 1-3 at 75.)  The Note and the Mortgage were agreements between Plaintiff and the Debtor.  (Id.)  Indeed, Plaintiff obtained the Judgment against the Debtor, not Defendants.  (Doc. No. 19-15.)  Defendants' liability arises from the Guaranty.

Plaintiff is entitled to assert its right to attorneys' fees under the separate Guaranty agreement because this agreement, unlike the Note and the Mortgage, did not merge with the Judgment.  See In re Clark Grind & Polish, Inc., 137 B.R. 172, 175 (Bankr. W.D. Pa. 1992) (finding that once a lender entered judgment on a Note, "any right it had to attorney[s'] fees and costs under the Note was extinguished."  However, the right to attorneys' fees under a separate Asset Purchase Agreement was not extinguished because the Asset Purchase Agreement did not merge into the Judgment.) (emphasis in original.)  There is no genuine dispute on a material fact as to whether Plaintiff is entitled to an award of reasonable attorneys' fees.  The Guaranty clearly allows for them, and the Guaranty survives the Judgment as an enforceable contract.  Therefore, Plaintiff's Motion for Summary Judgment will be granted on this issue.

### B.  Plaintiff's Award Will Not Be Reduced Based on Plaintiff's Subsequent Profitable Use of the Property

Defendants next argue that Plaintiff's award should be reduced by rental revenues and sale proceeds received by Plaintiff from Plaintiff's use of the Property.  (Doc. No. 25 at 3.)  Since the date of the Sheriff's sale, Plaintiff has been renting and selling units within the Property.  (Doc. No. 31 at 20-21.)  Defendants contend that when the Court calculates Plaintiff's award, the Court should deduct Plaintiff's rental and sale proceeds from the final amount owed.  (Doc. No. 25 at 4-5.)  Defendants have cited no authority to support the argument that they are

---

[3] Defendants did not sign the Note or the Mortgage.  (Doc. No. 19-12; Doc. No. 1-3 at 75.)

entitled to an offset or deduction for Plaintiff's use of the Property, and instead rely on principles of "fairness and equity."  (Id. at 3.)

Defendants argue that "the Deficiency Judgment Act was designed to protect the debtor, and to provide the creditor with the benefit of its bargain. . . ."  (Id.)  Defendants further argue that the Act's purpose "is to ensure that the creditor does not profit at the expense of the debtor." (Id. at 5.)

Defendants are correct insofar as the Act was adopted in order to remedy abusive practices by judgment creditors.  The Act:

> was passed in the 1940s to remedy a practice prevalent among judgment creditors during the Great Depression.  The practice was that creditors would credit only the price of the property purchased at a sheriff's sale towards their judgments, rather than credit the fair market value of the property.  The provisions of the [Deficiency Judgment Act] protect judgment debtors whose real estate is sold in execution, by requiring the judgment creditor to give credit for the fair market value of the property the judgment creditor purchased at his execution and not merely to credit the price at which the property was sold.

In re Zinchiak, 406 F.3d 214, 221 (3d Cir. 2005) (citing First Fed. Sav. and Loan Ass'n of Carnegie v. Keisling, 746 A.2d 1150, 1155 (Pa. Super. 2000)).

Here, the Act's protective purpose has been fulfilled—Plaintiff has credited Defendants with the fair market value of the Property, and with the sale proceeds from the purchase of Unit 418.  This is all the protection that a debtor is afforded under the Act.  Defendants are not entitled to a credit for any subsequent benefit the Plaintiff received as a result of Plaintiff's ownership of the Property.

Additionally, Plaintiff makes a strong point in regard to Defendants' argument on this issue:

> [I]t is Defendants' belief that "Plaintiff's business decision to hold
> the Property should not inure to the benefit of the Plaintiff." Such
> a position is ridiculous. By owning and holding the condominium
> units, [Plaintiff] took all the risk. [Plaintiff] was responsible for all
> operations, including the hiring of a management company,
> development, marketing and all costs. During this time, the value
> of the condominium units could have increased or decreased.
> Indeed, one can easily imagine Defendants protesting loudly any
> effort by [Plaintiff] to increase the amount of the Judgment based
> on a decline in the value of the condominium units. To suggest
> that [Plaintiff] is not entitled to enjoy the fruits of its efforts and
> financial risks it assumed is simply untenable.

(Doc. No. 27 at 7-8.) The Court agrees with Plaintiff. There is no logical or legal reason to grant

Defendants a deduction based on Plaintiff's profitable use of the Property. Again, because there

is no genuine dispute on a material fact involving this issue, Defendants' argument must fail.

### C. Plaintiff is Entitled to a Lawful Rate of Interest from the Date of the Issuance of the Judgment Until the Debt is Paid in Full

Finally, Defendants argue that Plaintiff's interest award should be reduced because in

reaching a conclusion on the fair market value of the property, the Court of Common Pleas took

into account two years' worth of "cost of capital" which Defendants contend "represented . . .

[P]laintiff's loss of use of money for two years as the property would be developed." (Doc. No.

31 at 18.) Defendants argue that "cost of capital . . . is similar to interest." (Id.) Accordingly,

they argue that two years' worth of interest has already been accounted for, and Plaintiff's

interest calculation should be reduced to reflect this amount.

Plaintiff argues that "cost of capital is not a substitute for future interest. Rather, it is one

of the components of the fair market value calculation to establish the property's value as of a

particular point in time." (Doc. No. 27 at 8.) Neither party has defined "cost of capital" for the

Court, but the Court has reviewed the appraisal document that was used by the Philadelphia

Court of Common Pleas to set the Property's fair market value ("the Appraisal").

Page seventy-eight of the Appraisal explains that a "discount" will be applied to the "net income" of the Property at a rate of twelve percent.  (Doc. No. 25-4 at 78.)  This discount is termed the "cost of capital."  (Id.)  On pages seventy-nine and eighty of the Appraisal, there are charts calculating the "cash flow" of the Property.  (Id. at 79-80.)  In these charts, the "cost of capital" is subtracted from the "net proceeds" of the Property.  (Id.)  Accordingly, regardless of the technical definition of "cost of capital," in this instance one thing is clear: the cost of capital did not increase the Judgment, it decreased it.  Accordingly, the cost of capital was not a credit representing two years' worth of interest owed to Plaintiff.

Under the Act, Plaintiff is entitled to lawful interest on the Judgment from the date the Judgment was issued until the day the Judgment is paid.  42 Pa. C.S.A. § 8101.  In Pennsylvania, lawful interest is statutorily defined as six percent.  41 Pa. S.A. § 202.  There is no genuine issue of material fact here.  Plaintiff is entitled to receive six percent interest on the Judgment, as outlined in Plaintiff's chart above.

IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 19) will be granted.  An appropriate Order follows.